UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUADALUPE CAMACHO ORDONEZ (A# 222-557-143),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-05440 DAD SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge severed this action from the multi-petitioner case Villanueva Abarca, et al. v. Chestnut, et al., No. 1:26-cv-03630 DAD SCR (E.D. Cal.), ECF No. 12, and assigned the matter to the undersigned to issue findings and recommendations on the merits of Petitioner's individual claims. ECF No. 14.

## I. Factual and Procedural History

Petitioner, a native and citizen of Mexico, entered the United States without inspection in 2006 and has been continuously present since. ECF No. 1 at 10, ¶¶ 71-72. He resides in Utah with his wife and three U.S.-citizen children. Id. at 7-8, ¶¶ 44-46.

On April 28, 2026, Petitioner was arrested by West Valley City (Utah) Police Department officers for assault in violation of Utah Code § 76-5-102(2), (3)(a), and domestic violence in the presence of a child under Utah Code § 76-5-114(2)(d). ECF No. 8-8 at 2-3 (Form I-213); ECF No. 7-2 at 5-6 (FBI "rap sheet"). Petitioner was transferred to the custody of Immigration and

Customs Enforcement ("ICE") on April 29, 2026. Id. at 3. Immigration officials issued Petitioner a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present without admission or parole) and § 1182(a)(7)(A)(i)(I) (noncitizen not in possession of valid entry document). Id. Petitioner is detained at the California City Detention Facility within this judicial district. ECF No. 1 at 2, ¶ 2.

Petitioner filed the instant petition on May 11, 2026, challenging his immigration detention on three grounds: (1) Violation of the Immigration and Nationality Act ("INA") on grounds his detention is not authorized under 8 U.S.C. § 1225(b)(2); (2) Violation of the Fifth Amendment Due Process Clause (Procedural Due Process); and (3) Violation of the Fifth Amendment Due Process (Substantive Due Process). ECF No. 1 at 20-23. By way of relief, Petitioner requests, *inter alia*: (1) a declaration that he may only be detained pursuant to the provisions of 8 U.S.C. § 1226, and that Respondents may not detain him pursuant to § 1225(b); and (2) an order that he be released if not provided a bond hearing within seven days. Id. at 23.

Respondents oppose the petition on grounds Petitioner's arrest for assault under Utah Code § 76-5-102 makes him subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act ("LRA"). ECF No. 8 at 5. Respondents further assert that it is Petitioner's burden to show that he is not subject to the LRA, and must exhaust administrative remedies by pursing a hearing in immigration court pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). Id.

On reply, Petitioner disputes that his assault arrest falls within the LRA's enumerated offenses, as it concerns neither the "assault of a law enforcement officer" nor "a crime resulting in death or serious bodily injury." ECF No. 10 at 5-6 (quoting § 1226(c)(1)(E)(ii)). Regarding LRA's "serious bodily injury" category, Petitioner argues that the relevant subsection, Utah Code § 76-5-102(2), is categorically broader than any offense the LRA could reach because no physical contact is required. Id. at 6. He further argues that the concurrent domestic violence charge illustrates this point because it expressly excludes acts involving the intentional infliction of serious bodily injury. Id. (citing Utah Code § 76-5-109.1(2)(c) (since renumbered § 76-5-114)).

////

## II. Analysis

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Petitioner's statutory claim challenges Respondents' reinterpretation of 8 U.S.C. § 1225(b)(2)(A) as authority for his detention and seeks access to a bond hearing before an IJ under § 1226. Respondents counter that Petitioner is subject to mandatory detention under both 8 U.S.C. § 1225(b)(2) and § 1226(c)(1)(E). The undersigned will address each provision in turn.

### A. Applicability of 8 U.S.C. § 1225(b)(2)

Respondent's argument for § 1225(b)(2) relies on the minority view of cases. See H.F. v. Albarran, No. 1:25-cv-1795 TLN EFB, 2025 WL 3691081, at *3 (E.D. Cal. Dec. 19, 2025); Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

> Courts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to those already living within the United States. See, e.g., Bostock, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025).

E.L.D.M. v. Becerra, No. 1:25-cv-1906 DJC JDP, 2025 WL 3707140, at *3 (E.D. Cal. Dec. 22, 2025); see also Gutierrez v. Chesnut, No. 1:25-cv-1515 DAD AC (HC), 2025 WL 3514495, at *4 (E.D. Cal. Dec. 8, 2025) ("Numerous district courts have held that § 1226, rather than § 1225, applies to individuals who were physically present in the United States for some period of time before they were detained by ICE."). The undersigned agrees with the majority view and finds that the applicable statute governing Petitioner's detention is § 1226, and not § 1225(b)(2).

The undersigned also notes the increasing body of appellate case law outside the Ninth Circuit on this issue. The undersigned declines to follow Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026), for the reasons articulated in De La Paz Salazar, et al. v. Noem, No. 1:26-cv-0899 DC SCR, 2026 WL 915128, at *4 (E.D. Cal. Apr. 3, 2026). The undersigned instead finds persuasive the Second Circuit's extensive analysis in Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026). See also Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami, 175 F.4th 1258 (11th Cir. 2026) (holding that § 1226(a) governs detention of "unadmitted [non-citizens] found in the interior of the United States" and that such non-citizens "are eligible for bond while they go through immigration proceedings"); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026) (holding that § 1226(a) governs detention of individuals who entered without inspection but are arrested in the interior of the United States); Santillan Quiroz v. Mullin, -- F.4th --, 2026 WL 1876709 (10th Cir. June 30, 2026) (same).

Accordingly, at this point in the analysis, Petitioner is detained generally under § 1226. The undersigned will next analyze whether Petitioner is subject to the "default" provision at § 1226(a) or "falls into one of the enumerated categories involving criminal offenses" that triggers mandatory detention under § 1226(c). See Jennings v. Rodriguez, 583 U.S. 281, 303 (2018).

**B. Applicability of 8 U.S.C. § 1226(c)(1)(E)**

**i. Petitioner is not required to exhaust administrative remedies.**

Before considering the potential application of the LRA, the undersigned considers the Parties' exhaustion arguments. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011)). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). "If a petitioner

fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused. Hernandez, 872 F.3d at 988 (citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Generally, principles of prudential exhaustion require a noncitizen to pursue a Joseph hearing before raising § 1226(c) objections in habeas. See Buckley v. Chestnut, et al., No. 1:26-cv-02624-DAD-JDP, 2026 WL 1030931, at * 2-4 (E.D. Cal. Apr. 16, 2026) (declining to waive prudential exhaustion requirements because petitioner's appeal of his Joseph hearing was pending). However, Petitioner's impossibility arguments are well taken. Even if Petitioner prevails in a Joseph hearing, under BIA precedent an immigration judge would likely find he remains subject to mandatory § 1225(b)(2) detention under Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Therefore, the undersigned finds that pursuit of administrative remedies would be futile and waives that requirement. See Lopez Lopez v. Warden, No. 1:26-CV-03556-DAD-CKD (HC), 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026) (waiving exhaustion through a Joseph hearing where the government argued the petitioner was subject to § 1226(c) and § 1225(b)(2)).

**ii. The LRA does not apply to Petitioner's pending charges.**

The undersigned turns next to the LRA analysis. Congress enacted the LRA in January 2025, expanding mandatory detention to include anyone who (1) is inadmissible pursuant to paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" See Pub. L. No. 119–1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)(i)-(ii)). The LRA's first statutory condition is met because immigration officials charged Petitioner as inadmissible under

§§ 1182(a)(6) and (7). ECF No. 8-8 at 3.

Because the LRA's assault category includes the inapposite qualifier "of a law enforcement officer," the Petitioner's arrest only satisfies the second statutory condition if it involved a "crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii). The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred." Id. § 1226(c)(2). In Utah, a "serious bodily injury" is a "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code § 76-1-101.5(17).

Respondents argue that Petitioner is subject to the LRA because he has been charged with assault under Utah Code § 76-1-102. They did not submit a police report or otherwise argue that Petitioner inflicted a serious bodily injury. Instead, they argue that the LRA applies because the state statute's definition of assault includes "an element of bodily injury." ECF No. 8 at 1. The relevant portions of the Utah statute read:

> (2) An actor commits assault if the actor:
>
> (a) attempts, with unlawful force or violence, to inflict bodily injury on an individual; or
>
> (b) commits an act, with unlawful force or violence, that:
>
> (i) causes bodily injury to an individual; or
>
> (ii) creates a substantial risk of bodily injury to an individual.
>
> (3)(a) A violation of Subsection (2) is a class B misdemeanor.
>
> (b) Notwithstanding Subsection (3)(a), a violation of Subsection (2) is a class A misdemeanor if:
>
> (i) the actor causes substantial bodily injury to an individual; or
>
> (ii) the individual is pregnant and the actor has knowledge of the pregnancy.

Utah Code § 76-5-102.

The undersigned agrees with Petitioner that this statute categorically excludes a crime involving "serious bodily injury" as that term is understood under Utah state law. In so finding, the undersigned is persuaded by and adopts Magistrate Judge Peterson's LRA analysis in a factually indistinguishable case involving the same Utah statute:

> In the absence of information to the contrary, I find that being charged under this section does not subject petitioner to mandatory detention. This section criminalizes either the attempt to inflict injury or acts that cause "bodily injury" or "substantial bodily injury." Utah Code § 76-5-102(2), (3). This section does not, however, criminalize acts that result in a "serious bodily injury." This omission is critical because Utah law "delineates three tiers of injury in the criminal context: bodily injury being the lowest tier, substantial bodily injury the middle, and serious bodily injury the highest." See State v. Lyden, 2020 UT App 66, ¶ 24. Accordingly, even if petitioner caused a "bodily injury" or a "substantial body injury," it does not follow that he caused a "serious bodily injury." On the contrary, because lawmakers chose not to include the highest tier of bodily injury in this section, this charge does not support respondent's argument that petitioner's alleged crime resulted in a "serious bodily injury." Notably, another section of the Utah Code criminalizes acts resulting in a "serious bodily injury," and charging authorities seemingly chose not to charge petitioner under that section. See Utah Code § 76-5-103(3)(b).

Arellanes v. Warden of the Golden State Annex Detention Facility, No. 1:26-CV-2210-DAD-JDP, 2026 WL 1143567, at *2 (E.D. Cal. Apr. 28, 2026) (footnote omitted), report and recommendation adopted, No. 1:26-CV-02210-DAD-JDP (HC), 2026 WL 1713941 (E.D. Cal. June 12, 2026).

Here, Petitioner's rap sheet reflects that he was charged with a Class B misdemeanor, ECF No. 7-2 at 6 (citing Utah Code § 76-5-102(3)(A)), which covers only the lowest of three tiers, "bodily injury." Moreover, police separately charged Petitioner with domestic violence in the presence of a child under Utah Code § 76-5-114(2)(d), which expressly covers "circumstances not amounting" to the intentional infliction of serious bodily injury under § 76-5-114(2)(b):

> (2) An actor commits domestic violence in the presence of a child if the actor:
>
> > (a) commits or attempts to commit a criminal homicide offense against a cohabitant in the presence

> of a child;
>
> (b) intentionally causes serious bodily injury to a cohabitant or uses a dangerous weapon or other means or force likely to produce death or serious bodily injury against a cohabitant, in the presence of a child;
>
> (c) intentionally or knowingly impedes the breathing or the circulation of blood of another individual by the actor's use of unlawful force or violence by applying pressure to the neck or throat of an individual or obstructing the nose, mouth, or airway of an individual, in the presence of a child; or
>
> (d) under circumstances not amounting to a violation of Subsection (2)(a), (2)(b), or (2)(c), commits an act of domestic violence in the presence of a child.

Utah Code § 76-5-114(2)(a)-(d). Accordingly, because Petitioner's pending charges do not involve crimes that "result[] in death or serious bodily injury to another person," the undersigned finds that the LRA does not apply here. Because Petitioner is not subject to § 1226(c), which "carves out a statutory category of aliens who may *not* be released under § 1226(a)," the undersigned instead finds that he is detained pursuant to the "default" provision at § 1226(a). See Jennings, 583 U.S. at 288-289 (emphasis in original).

Regarding the appropriate remedy, the undersigned observes that Judge Drozd has found post-deprivation remedies appropriate in cases with particularized flight risks that "urgently require arrest" and where a pre-deprivation hearing "would have been impracticable and/or would have motivated [petitioner's] flight." O.A.C.S. v. Wofford, No. 1:25-cv-1652 DAD CSK (HC), 2025 WL 3485221, at *4 (E.D. Cal. Dec. 4, 2025) (quoting Martinez Hernandez v. Andrews, No. 1:25-cv-1035 JLT HBK, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025)). Here, Respondents have not identified any particularized flight risk to justify the lack of pre-deprivation notice and hearing.

Thus, the circumstances of Petitioner's detention are substantially similar to prior cases where Judge Drozd has ordered immediate release. See Cardenas v. Chestnut, No. 1:26-cv-02073-DAD-SCR (HC), 2026 WL 785871, at *1 (E.D. Cal. Mar. 20, 2026). Although Petitioner does not explicitly request immediate release in his petition, he does request "any other and further relief that this Court deems just and proper." ECF No. 1 at 24. "Habeas is at its core a

remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (internal citation omitted). In light of the traditional habeas remedy being release from custody and because Petitioner requests any relief the court deems just and proper, the undersigned recommends that court finds that immediate release is the appropriate relief for Petitioner.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner Jose Guadalupe Camacho Ordonez's petition for writ of habeas corpus (ECF No. 1) be GRANTED as follows:

    a. Respondents be ORDERED to immediately release Petitioner Jose Guadalupe Camacho Ordonez (A# 222-557-143) from custody;

    b. Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless they provide him with notice and a pre-detention hearing before an immigration judge, at which hearing the burden will be set in accordance with 8 U.S.C. § 1226(a) and its implementing regulations;

2. The Clerk of the Court be directed to serve a copy of this order on the California City Detention Facility; and

3. The Clerk of the Court be directed to ENTER judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

////

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 21, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE